McCALLUM, J.
The City of Shreveport ("City") appeals a district court judgment affirming the decision by the Shreveport Municipal Fire and Police Civil Service Board ("Board") to indemnify one of its members for the attorney fees that he incurred while defending a lawsuit filed by the City against him.
We affirm the district court judgment.
FACTS
Michael Carter is a member of the Board as well as the President of the Shreveport Police Officers Association. On September 14, 2015, Carter served public records requests upon the City. He subsequently filed a petition for a writ of mandamus, damages, and attorney fees against the City and the Shreveport Police Chief and City Attorney, in their individual and official capacities. Carter was also a plaintiff in a lawsuit filed in federal court against the City.
On November 5, 2015, the City filed suit against Carter seeking to enjoin him from participating in Board meetings and serving *480 on the Board on the grounds that his lawsuits against the City presented a conflict of interest. In response, Carter filed a motion for summary judgment and an exception of no cause of action. He also requested sanctions against the City in the form of attorney fees.
A hearing on the pending matters was held before Judge Craig Marcotte on September 12, 2016. The trial court granted summary judgment in favor of Carter and dismissed the injunction suit because that lawsuit became moot when the public records lawsuit was dismissed. Attorney fees were awarded to Carter in his public records lawsuit, but his request for sanctions in the City's lawsuit was denied. The City was taxed with costs in both suits.
On September 14, 2016, Carter wrote to the Board asking that it indemnify him for his attorney fees in the City's lawsuit. Attached to his letter was a copy of Shreveport Ordinance Section 2-106 ("Ordinance"). The Board considered the matter at its October 12, 2016, meeting. Carter related to the Board that his attorney had been served with the City's lawsuit on November 10, 2015, which was approximately two months after he was sworn in as a member of the Board. He contended that the purpose of the City's lawsuit was to prevent him from serving on the Board. He added that the Board's attorney at the time had told him that she could not represent him in the lawsuit due to a conflict of interest. A billing summary from Carter's attorney was submitted at the meeting. She asserted that she had worked 55 hours at a rate of $175 per hour, making the total attorney fees $9,625.
A representative from the City present at the Board hearing argued that Carter had not been sued in his official capacity, and that if Carter wanted attorney fees, he should have asked for them in the trial court. The Board, which did not find the City's arguments to be persuasive, voted for Carter to be indemnified for $9,625 in attorney fees and $524 in court costs.
The City appealed the Board's decision to the district court. Judge Ramon Lafitte affirmed the award of $9,625 in attorney fees, but reversed the award of $524 for costs because the City had paid that after the Board hearing.
The City now appeals the district court's ruling. The City argues that (1) the Board lacked the jurisdiction to consider the request for attorney fees; (2) the provisions of the Ordinance were not met; and (3) the amount of attorney fees was not supported because the relevant factors concerning attorney fees were not considered.
DISCUSSION
Board's Jurisdiction
The City contends that the Board's authority to award attorney fees is limited to La. R.S. 33:2501.1, and, accordingly, the Board lacked the jurisdiction to reimburse Carter for his attorney fees. We disagree.
Questions of law, such as the proper interpretation of a statute, are reviewed by this court under the de novo standard of review. Louisiana Municipal Ass'n v. State , 2004-0227 (La. 1/19/05), 893 So.2d 809 ; Gannett River States Publ'g Corp. v. Monroe City School Bd. , 44,231 (La. App. 2 Cir. 4/8/09), 8 So.3d 833, writ denied , 2009-1029 (La. 6/19/09), 10 So.3d 745.
When interpreting statutes, we are guided as stated by the Louisiana Supreme Court in M.J. Farms, Ltd. v. Exxon Mobil Corp. , 2007-2371, pp. 13-14 (La. 7/1/08), 998 So.2d 16, 27 :
The starting point in the interpretation of any statute is the language of the statute itself. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law *481 shall be applied as written and no further interpretation may be made in search of the intent of the legislature." However, "when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." Moreover, "when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole."
It is also well established that the Legislature is presumed to enact each statute with deliberation and with full knowledge of all existing laws on the same subject. Thus, legislative language will be interpreted on the assumption the Legislature was aware of existing statutes, well established principles of statutory construction and with knowledge of the effect of their acts and a purpose in view. It is equally well settled under our rules of statutory construction, where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter.
Citations omitted.
The laws for Fire and Police Civil Service Boards in municipalities with populations between 13,000 and 250,000, such as Shreveport, are found in Part II of Chapter 5 of Title 33, La. R.S. 33:2471 through 33:2508. The membership of the Board is provided for in La. R.S. 33:2476.1, which states that the Board is to be composed of seven members, with two of the members elected and appointed from the Shreveport Police Department. Carter was one of those members.
La. R.S. 33:2477 sets forth the duties of the Board. It states that the Board shall:
(1) Represent the public interest in matters of personnel administration in the fire and police services of the said municipal government.
(2) Advise and assist the governing body, mayor, commissioner of public safety, and the chiefs of the fire and police departments of the municipality, with reference to the maintenance and improvement of personnel standards and administration in the fire and police services, and the classified system.
(3) Advise and assist the employees in the classified service with reference to the maintenance, improvement, and administration of personnel matters related to any individual or group of employees.
(4) Make, at the direction of the mayor, commissioner of public safety, chief of either the fire or police department, or upon the written petition of any citizen for just cause, or upon its own motion, any investigation concerning the administration of personnel or the compliance with the provisions of this Part in the said municipal fire and police services; review, and modify or set aside upon its own motion, any of its actions; take any other action which it determines to be desirable or necessary in the public interest, or to carry out effectively the provisions and purposes of this Part....
(5) Conduct investigations and pass upon complaints by or against any officer or employee in the classified service for the purpose of demotion, reduction in position or abolition thereof, suspension or dismissal of the officer or employee, in accordance with the provisions of this Part....
(6) Hear and pass upon matters which the mayor, commissioner of public safety, the chiefs of the departments affected by this Part, and the state examiner of municipal fire and police civil service bring before it.
*482 (7) Make, alter, amend, and promulgate rules necessary to carry out effectively the provisions of this Part.
(8) Adopt and maintain a classification plan. The classification plan shall be adopted and maintained by rules of the board.
(9) Make reports to the governing body, either upon its own motion or upon the official request of the governing body, regarding general or special matters of personnel administration in and for the municipal fire and police services of the municipality, or with reference to any appropriation made by the governing body for the expenses incidental to the operation of the board.
The City argues that the Board lacked jurisdiction to hear the request for attorney fees because the Board has limited authority to award attorney fees under La. R.S. 33:2501.1, which is not relevant to this matter.
La. R.S. 33:2501 governs appeals by employees to the Board.[1] La. R.S. 33:2501.1, titled "Authorization for awarding attorney fees," provides:
When an appeal is taken by an employee in the classified service pursuant to R.S. 33:2501 to a municipal fire and police civil service board and the board determines, in reversing the decision of the appointing authority, that the corrective or disciplinary action taken by the appointing authority was without just cause as provided in R.S. 33:2501, the board may award to the appealing employee attorney fees to be assessed against the appointing authority not to exceed one thousand dollars in any one appeal.
La. R.S. 33:2501 was amended and reenacted by Act 473 of 1983. La. R.S. 33:2501.1 was added by Act 1005 of 1991. We agree that La. R.S. 33:2501.1 is inapplicable by its terms as Carter was not taking an appeal to the Board of corrective or disciplinary action. Nevertheless, our inquiry does not end there.
Carter cites La. R.S. 33:2506 as support for his argument that the Board had authority to grant his attorney fees. That statute reads:
If this Part, or its enforcement by the board is called into question in any judicial proceeding, or if any person fails or refuses to comply with the lawful orders or directions of the board, the board may call upon the attorney general, or the chief legal officer of the municipality, or may employ independent counsel to represent it in sustaining this Part and enforcing it. Nothing contained herein shall prevent any municipal officer, employee, or private citizen from taking legal action in the courts to enforce the provisions of this Part or of any rule, order, or other lawful action of the board.
The City counters that La. R.S. 33:2506 has no application in this matter because that statute allows the Board to retain counsel in cases when the civil service law is involved or for the enforcement of the civil service law. However, the City's lawsuit was an attempt to enjoin Carter from serving on the Board as a duly chosen representative of Shreveport police officers while his suits were pending. Thus, the *483 Board's enforcement of Part II's provisions concerning the service and duties of Board members was called into question in a judicial proceeding. Although, in this circumstance, the Board did not hire counsel, we find no prohibition to the Board effectively ratifying Carter's hiring of counsel to represent himself in the City's lawsuit.
We are also cognizant that among the Board's duties is the duty to "take any other action which it determines to be desirable or necessary in the public interest, or to carry out effectively the provisions and purposes of this Part." La. R.S. 33:2477(4). The City argues that the statute does not apply because personnel administration was not at issue. However, reimbursing a member who incurred attorney fees because his presence on the Board was threatened was clearly consistent with this duty.
We are also mindful of La. R.S. 33:2478 and 33:2480. The former states that the Board "may adopt and execute rules, regulations, and orders necessary or desirable effectively to carry out the provisions of this Part, and shall do so when expressly required by this Part." The latter requires the City to make adequate annual appropriations to enable the Board to carry out effectively the duties imposed upon the Board and to furnish the Board with office space, furnishings, equipment, and materials and supplies necessary for its operation.
We note the City's argument that Carter was sued in his individual capacity, not his official capacity. We find no merit to this argument. Carter's position on the Board was the crux of the City's lawsuit, which sought to enjoin him from serving on the Board in his official capacity and from meeting his legal obligations as a member of the Board. In conclusion, we find that the Board had the statutory authority to consider Carter's request and to order payment of the fees that he incurred as a result of the City's lawsuit.
The City further contends that indemnification under the Ordinance was foreclosed because Carter did not strictly comply with the Ordinance's procedural requirements, and no court found that Carter was acting in the discharge of his duties and within the scope of his office with regard to the claims asserted. We pretermit that discussion because we find the basis for reimbursement of Carter's attorney fees was under state law, not under the Ordinance.
Res Judicata
The City argues that res judicata bars the award of attorney fees because sanctions in the form of attorney fees were denied by Judge Marcotte.
Under La. R.S. 13:4231, a second action is precluded by res judicata when all of the following are satisfied: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. Burguieres v. Pollingue , 2002-1385 (La. 2/25/03), 843 So.2d 1049.
The doctrine of res judicata is stricti juris , and any doubt concerning the application of res judicata must be resolved against its application. Kelty v. Brumfield , 1993-1142 (La. 2/25/94), 633 So.2d 1210.
There was no second action or lawsuit seeking attorney fees in this matter. Carter's attorney fees will be paid by the City not in its role as a party to the lawsuit, but rather as the municipality which funds the Board. As such, this argument is without merit.
*484 Amount of attorney fees
The City argues on appeal that the amount ($9,625) awarded in attorney fees is unsupported by this record. The City further argues that the Board did not consider the relevant factors concerning the reasonableness of attorney fees as set forth in State, Dept. of Transp. & Dev. v. Williamson , 597 So.2d 439 (La. 1992). The City even maintains this Court cannot determine the reasonableness of the award based on this record.
The evidence submitted by Carter's attorney was, no doubt, less than ideal in this matter. Nevertheless, the billing summary that she did submit indicated the 55 hours that she claimed to have worked in this matter. We are cognizant that at the Board hearing, the City failed to contemporaneously object to or challenge the amount sought by Carter or the mode of proof. If the City had challenged the alleged paucity of evidence, the Board members, who were faced with the unusual circumstance of awarding attorney fees to another member, would have had the opportunity to question Carter's attorney further on this issue or seek additional proof. Accordingly, the City waived any argument against the amount of the attorney fee awarded.
CONCLUSION
At the City's costs of $858.49, the judgment of the district court is AFFIRMED.
APPLICATION FOR REHEARING
Before Felicia Toney Williams, Daniel Milton Moore III, James Mark Stephens, Jay Bowen McCallum - Writing, and E. Joseph Bleich, JJ.
Rehearing denied.

La. R.S. 33:2501(A) provides: "Any regular employee in the classified service who feels that he has been discharged or subjected to any corrective or disciplinary action without just cause, may, within fifteen days after the action, demand, in writing, a hearing and investigation by the board to determine the reasonableness of the action. The board shall grant the employee a hearing and investigation within thirty days after receipt of the written request."