COX, J.
The City of Shreveport ("City") appealed a decision by the Shreveport Municipal Fire and Police Civil Service Board ("Board") to the First Judicial District Court, Caddo Parish, Louisiana. The district court upheld the Board's decision. The City now appeals the district court's decision. For the following reasons, we affirm.
FACTS
Lt. Mark Wheeler has been with the Shreveport Police Department ("SPD") for over 25 years. In September of 2015, Lt. Wheeler had to have surgery on his feet, requiring him to take sick leave. He expected to be back to work in six weeks, but complications from the surgery occurred. He was out on leave until March 30, 2016. In March of 2016, Lt. Wheeler had been medically cleared to return to work and qualified with his firearm. He was assigned to work in the property room. There were no issues or problems with his sick leave.
The issue arose in regard to Lt. Wheeler's annual P.O.S.T. training.[1] P.O.S.T. certification is required to be completed every 13 months. It is SPD policy that officers complete their annual training during their *645 birth month, which is November for Lt. Wheeler. Lt. Wheeler needed to complete his P.O.S.T. training in November of 2015, but he was on extended sick leave. SPD policy does not allow an officer to attend training while on sick leave. While on sick leave, officers are limited to the following activities, according to the policy manual:
Unless granted special consideration, members on sick leave shall remain at their residence for the entire sick leave period except to participate in such activities as voting, religious activities, obtaining medication, [medical care], rehabilitative or therapeutic exercise, other therapeutic activities, obtaining food or meal.
In February of 2016, Lt. Wheeler received a letter from human resources stating he had not completed his annual P.O.S.T. training and he had until March 31, 2016, to complete the training. The letter also gave the option of completing a P.O.S.T. waiver instead of the training. The P.O.S.T. waiver was created by the P.O.S.T. Council. The Chief of Police is required to sign the waiver before it is submitted. SPD does not have any written regulations or policies regarding the signing of P.O.S.T. waivers for officers.
Lt. Wheeler submitted his P.O.S.T. certification waiver to Chief Shaw. Chief Shaw did not sign the waiver, and his reasons for not signing are not known. By not signing the waiver, Lt. Wheeler's P.O.S.T. certification was revoked because he could not get his re-trainer by March 31, 2016. When his certification was revoked, the State portion of his pay was suspended. Lt. Wheeler requested that Chief Crump sign the waiver, but he also refused. Because of his inability to attend P.O.S.T. training and lack of a waiver, Lt. Wheeler's P.O.S.T. certification was revoked by the P.O.S.T. council, effective May 12, 2016.
Lt. Wheeler initially took the issue of the Chief not signing the waiver to the First Judicial District Court by filing a petition for mandamus to order the Chief to sign the waiver. The district court said it would not order the Chief to sign the waiver because signing the waiver was in the Chief's discretion.
Lt. Wheeler then requested that the Board investigate why Chief Crump would not sign the waiver and order the waiver be signed. He further requested that a policy be adopted to prevent this situation from happening again to other officers on sick leave. The Board's hearing on the issue was held on November 17, 2016. The Board members discussed the rule that allows a retired or terminated officer, or an officer who quits, to keep his P.O.S.T. certification for 5 years. If that officer decides to return to work as a police officer within 5 years, his P.O.S.T. certification is still valid and he only needs to qualify with his firearm.
Lt. Wheeler stated at the Board hearing that he was told he would be required to retake the P.O.S.T. test to get recertified. He was told that it was in his best interest to attend an Academy class (with new recruits) for six to eight weeks and then retake the P.O.S.T. test. Lt. Wheeler stated that he was told he could be terminated if he failed the P.O.S.T. test for any reason. He received a letter from human resources, dated July 18, 2016, which stated his P.O.S.T certification was revoked, and "due to policy," he had to relinquish his weapon and commission card and not wear a police uniform until he completes the P.O.S.T. certification. If either Chief Shaw or Chief Crump would have signed the waiver, Lt. Wheeler's P.O.S.T. certification would have been reinstated and he would have only been required to reshoot the P.O.S.T. firearm test. Without the waiver, and in addition to reshooting the firearm *646 test, Lt. Wheeler would also be required to retake the written portion of the P.O.S.T. certification.
Lt. Wheeler stated he did not have a problem with reshooting the firearm portion of the test with the new recruits. However, he did not agree with attending the Academy for six to eight weeks with new recruits. He believed his authority would be undermined if he attended class with new recruits. He said P.O.S.T. classes are offered for two weeks every month, but he was not given the opportunity to attend those classes. Additionally, SPD did not give Lt. Wheeler the option to attend his P.O.S.T. training before he took his sick leave or online while he was on sick leave.
At the Board hearing, Chief Crump stated that this situation was ongoing when he became Interim Chief. He stated that he came into the situation late, with little information, and in his discretion, did not sign the waiver. One concern he had with signing the waiver was that other officers would use this situation to abuse the requests of waivers in the future. However, he said Lt. Wheeler was not known for abusing sick leave.
After hearing from witnesses and the arguments of both parties, the Board members who were present voted unanimously to order Chief Crump to sign the waiver and forward it to the P.O.S.T. Council. The Board was clear that it was not taking away the Chief's discretion on signing future waivers.
On December 8, 2016, the City appealed the Board's decision to the First Judicial District Court, Caddo Parish, Louisiana. The City argued that the Board did not have the authority to override the Chief's discretionary decisions. The district court stated in this instance, the Board had the authority to override this discretionary decision. The district court found that the Board's decision requiring the Chief to sign the waiver was made in good faith for cause and permitted by law. The City now appeals the district court's judgment in favor of the Board.
DISCUSSION
The City argues the Board erred when it ordered Chief Crump to execute the P.O.S.T. waiver on behalf of Lt. Wheeler. The City asserts that the Board's decision was an improper exercise of authority and was not in good faith for just cause. The City also argues that the Board's decision was not supported by the facts and evidence presented.
Lt. Wheeler presented the matter to the Board pursuant to the provisions of La. R.S. 33:2477(4), which allows any citizen to request, for just cause, that the Board conduct an investigation into the administration of personnel or compliance with civil service law. The City argues that signing a P.O.S.T. waiver does not implicate civil service law in any way and is not desirable for public interest. For these reasons, the City asserts that the Board's investigation and decision were legal error.
Whether or not the Board had the authority to order the Chief to sign the waiver is a question of law. Questions of law, such as the proper interpretation of a statute, are reviewed by this Court under the de novo standard of review. City of Shreveport v. Shreveport Mun. Fire & Police Civil Serv. Bd. , 52,304 (La. App. 2 Cir. 9/26/18), 256 So. 3d 478. The starting point in the interpretation of any statute is the language of the statute itself. M.J. Farms, Ltd. v. Exxon Mobil Corp. , 07-2371 (La. 7/1/08), 998 So.2d 16. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9.
*647 The laws for Fire and Police Civil Service Boards in municipalities the size of Shreveport are found in La. R.S. 33:2471 through 33:2508. La. R.S. 33:2477(4) states the Board has the authority to do the following:
(4) Make, at the direction of the mayor, commissioner of public safety, chief of either the fire or police department, or upon the written petition of any citizen for just cause , or upon its own motion, any investigation concerning the administration of personnel or the compliance with the provisions of this Part in the said municipal fire and police services; review, and modify or set aside upon its own motion, any of its actions; take any other action which it determines to be desirable or necessary in the public interest , or to carry out effectively the provisions and purposes of this Part. However, any investigation requested of the board by the mayor, commissioner of public safety, chief of either the fire or police department, or upon the written petition of any citizen for just cause shall be completed within sixty days of the board's receipt of the request for an investigation or receipt of a written petition of any citizen, or both. (Emphasis added.)
In reading the statute, we find the clear and unambiguous language of La. R.S. 33:2477(4) authorizes the Board to investigate the administration of personnel. Simply put, the Board is authorized to take any action in the exercise of its duties and responsibilities that does not contravene or violate law. Smith v. Ruston Fire & Police Civil Service Board , 41,297 (La. App. 2 Cir. 9/12/06), 939 So.2d 586. We find no provision of law prohibiting the Board from ordering the Chief to sign a waiver, especially under these circumstances. In this instance, the Board investigated why the Chief refused to sign the P.O.S.T. waiver for a veteran employee with a valid excuse for needing the waiver. In our view, when a veteran officer loses his certification, and ultimately his badge, under circumstances that could have been avoided, that issue falls under "administration of personnel."
The Board also has the authority to take any action it determines to be desirable or necessary in the public interest. The public holds an interest in the police officers serving and protecting it. Here, the Board deemed it desirable in the public interest to return to the police force a veteran officer with a clean record. We find the Board was acting within its duties, as outlined in La. R.S. 33:2477. This portion of the City's argument lacks merit.
An appointing authority may appeal any decision of the board or any action taken by the board that is prejudicial to the appointing authority. La. R.S. 33:2501(E). This hearing shall be confined to the determination of whether the decision made by the board was made in good faith for cause. Id. Factual findings in civil service cases are to be given deference by a reviewing court. Morris v. City of Minden , 50,406 (La. App. 2 Cir. 3/2/16), 189 So.3d 487, writ denied , 16-0866 (La. 6/3/16), 192 So.3d 748. Good faith does not occur if the appointing authority acts arbitrarily or capriciously, or as a result of prejudice or political expediency. Richardson v. City of Shreveport , 52,203 (La. App. 2 Cir. 6/27/18), 251 So.3d 691. Arbitrary or capricious means the lack of a rational basis for the action taken. Moore v. Ware , 01-3341 (La. 2/25/03), 839 So.2d 940 ; Richardson v. City of Shreveport , supra.
After hearing the testimony and evidence presented in the case, the Board discussed whether the Chief gave a reason for refusing to sign the waiver. The Board did not find in the evidence a basis for denying the waiver. As one Board member stated, "[T]his...didn't seem as a discretion, just a blanket, I'm not going to do it."
*648 The Board noted that officers are allowed "365 days" of sick leave a year. See La. R.S. 33:2214(B)(1). The department policy which does not allow officers to attend P.O.S.T. training while on sick leave, coupled with this allowable time of sick leave, created what the Board called a "Catch 22" for officers on extended leave who need P.O.S.T. training. The circumstances of Lt. Wheeler's sick leave, together with this "Catch 22," form a rational basis for the Board's decision. For these reasons, we find the Board was in good faith for just cause when ordering the Chief to sign Lt. Wheeler's waiver. This argument lacks merit.
CONCLUSION
For the reasons outlined above, we affirm the district court's judgment, which held that the Board had the authority to order the Chief to sign the P.O.S.T. waiver and that the Board's decision was in good faith for just cause. Costs associated with this appeal have already been paid by the City of Shreveport.
AFFIRMED.

P.O.S.T. stands for Peace Officer Standards and Training.